[No. 952.]

## THE STATE OF NEVADA EX REL. W. W. HOBART, RELATOR, *v.* RICHARD RYLAND, TREASURER OF EUREKA COUNTY, RESPONDENT.

MILITIA ROLL—EXPENSES OF, HOW PAID.—In construing the provisions of the statute: *Held*, that the bills of county assessors for making the militia roll must be passed upon by the state board of military auditors and paid out of the militia fund of the state.

APPLICATION for Mandamus.

The facts are stated in the opinion.

*Robert M. Clarke*, for Relator.

*Bishop & Sabin* and *C. N. Harris*, for Respondent.

By the Court, LEONARD J.:

The relator, as state controller, filed his petition in this court, praying for the issuance of an alternative writ of mandamus requiring respondent to show cause why he had failed to pay into the state treasury the sum of one hundred and forty four dollars alleged to be due to the state, and that upon the hearing respondent be peremptorily commanded to pay said sum into the state treasury.

Respondent appeared, and in justification of his action in the premises, stated the following facts in his answer: That in the year 1877, one H. Knight was assessor of Eureka county, and as such officer, as required by law, he prepared and made out a list or roll of all persons in the county subject to military duty in said year; that thereafter said Knight duly presented to the board of county commissioners of the county his bill for services in making said military list or roll, for allowance; that on the first day of April, 1878, the board duly allowed said bill in the sum of four hundred dollars; that the same was thereafter duly approved and allowed by the county auditor of the county for the sum of four hundred dollars; that the portion of said bill to be paid by the county of Eureka was two hundred and fifty-six dollars, and the portion by the state was one hundred and forty-four dollars, as fixed by law; that on the first day of April, 1878, the said county auditor drew his warrant upon respondent for the sum of two hundred and fifty-six dollars, directing the payment of said sum to said Knight, for and on account of the portion of said bill due and payable from Eureka county, which sum respondent, as such treasurer, then and there paid from the funds of said county, then in his hands; that said county auditor then and there issued and delivered to respondent, as such treasurer, a voucher against the state of Nevada for the sum of one hundred and forty-four dollars, the same being the amount due from the state to said Knight, on account of his said services; that in the first semi-annual settlement for the year 1878 with the state, respondent returned said voucher for one hundred and forty-four dollars to the relator as state controller, as a legal and just charge and demand against the state; that relator wrongfully refused to allow said voucher in said semi-annual settlement as a lawful charge against the state.

Relator demurred to respondent's answer, on the ground that it did not state facts sufficient to constitute a defense; that it appeared from the answer that it was the duty of the respondent to pay over the said sum of money mentioned in the petition.

Section 3200, Compiled Laws, provides in substance that when an allowance is made to any assessor or auditor, as in the revenue law provided, the clerk of the board of county commissioners shall certify the account allowed, to the auditor, who shall draw his warrant on the county treasurer for that part of the same which the county is required to pay, which shall be in proportion to the taxes levied for state and county purposes respectively; and the auditor shall make a certified copy of the account and indorse thereon the amount due from the state, * * * and shall furnish such copy, with its indorsements, to the county treasurer, who shall pay out of the moneys belonging to the state and county respectively the amounts indorsed on such accounts to the assessor and auditor, and take his receipt therefor thereon.   See also section 3210.

As we understand, the board of commissioners, auditor and treasurer, acted under the sections of the revenue law last referred to, in relation to the claim of Knight for preparing the military roll, and the principal question before us, is, whether or not those sections which provide for the payment of claims of assessors for services rendered in assessing property also apply to claims of such officers in preparing the military roll.   In our opinion they do not.

Under "An Act to provide for Organizing and Disciplining the Militia of the State," approved March 4, 1865 (Comp. Laws, 3641, 3642), it is made the duty of the county assessor of each revenue district or county, when he prepares a roll containing the taxable inhabitants of his county, to enroll all the inhabitants thereof subject to military duty, which list or roll shall be sworn to. * * * "And the compensation allowed for making out said military list shall be the same, or be determined and fixed in the same manner, as for making out the assessment list."   No compensation is allowed for making an "assessment *list*" by the assessor, but section 3136 makes it his duty to prepare a *tax list or assessment roll*, in which book shall be listed all the property of the county subject to taxation.   The preparation of such tax list or assessment roll is a necessary part of a valid assessment of property, and the time properly

occupied in making the same is to be included in the number of days for which he is allowed a per diem of ten dollars, under section 3209.    We have no doubt that when the legislature used the words "assessment list" in section 3642 of the militia law, the same was intended as in the use of the words "tax list or assessment roll" in section 3136 of the revenue law.    Such being the case, it would seem that the assessor is really entitled to receive from some source the sum of ten dollars per day for the time necessarily required and occupied in making out a military list or roll.    The revenue law, however, neither requires the making of a military list or roll by the assessor, nor provides for payment of the expenses of the same.    The militia law does both.    But the provision of section 3642 of the militia law, that "the compensation allowed for making out said military list shall be the same, or be determined and fixed in the same manner as for making out the assessment list," simply fixes the amount of the compensation allowed.    It does not determine the manner of payment, whether by the state and county together or by either alone.    The words, "or be determined and fixed in the same manner" were intended to be explanatory of the remainder of the sentence quoted, so that the assessor's aggregate compensation for making out the military roll should not in any case exceed ten dollars per day.    For instance, had not those words been inserted, assessors might, perhaps, have claimed the same aggregate compensation for making out the military roll as they were allowed for making out the assessment roll, although the number of days employed upon the latter were more than those occupied upon the former.    At least, had it not been for the explanatory words there would have been some room for conflict of opinion.    Their meaning can not be as claimed by respondent, that is, that the assessor's bill for making out the military roll should be passed upon by the board of county commissioners and be paid by the state and county, in proportion to the taxes levied for state and county purposes respectively.    In the first place, it was not the intention of the legislature, as appears from the whole statute, that any portion of the expenses incident to enrolling, organ-

izing or sustaining a state militia should be borne by any county *per se*, but that the state at large should bear the same. The object of the law in enrolling the inhabitants of Eureka county subject to military duty was not for the protection of that county alone, but for the whole state. "In case of war, insurrection or rebellion, or of resistance to the execution of the laws of this state, * * * the commander-in-chief is authorized to call into active service any portion of the organized or enrolled militia of the state." (Comp. Laws, 3663.) The organized and enrolled militia of Eureka county may be called to do duty in Storey county, and *vice versa.* Under such circumstances, it was proper and equitable for the legislature to require the state to bear the burden entailed by the enactment of the militia law, and we have no doubt that such was the intention of the legislature. But in addition to the reason and evident spirit of the law, sections 3677, 3678, 3679 and 3680 provide that the commander-in-chief, the adjutant-general and state controller shall constitute a state board of military auditors; that such board shall have a seal, an impression of which shall be attached to all orders drawn upon the general or military fund; that no money shall be paid out of such fund by the state treasurer upon the order of such board except by order thereof, with the seal attached, and that such order shall specify upon its face the objects for which such money is paid and to whom; that it shall be the duty of said board to audit and pay all reasonable expenses incurred by volunteer companies in the service of this state and officers attached to the same, and all other claims required under the provisions of this act." * * *

A claim for the enrollment of the inhabitants of a county subject to military duty is as much a claim "required under the provisions" of the militia act as any other claim could be.

The required enrollment is the very foundation of the organization of the state militia, and the bills for the same must be passed upon by the military auditors instead of the county commissioners of any county. If no appropriation has been made for the payment of such claims, the legisla-

ture can come to the rescue of assessors, but county commissioners and treasurers can not, nor can courts.

In our opinion the voucher presented by respondent to relator did not excuse the former from payment of the sum of one hundred and forty-four dollars into the state treasury, and the demurrer must be sustained. Such being our view of this case, the writ of mandamus must issue commanding respondent forthwith to pay said sum of one hundred and forty-four dollars into the state treasury, as required by law.

It is so ordered.